## SUPREME COURT.

### In the Matter of ISADORE BAYARD.

*Constitutional limitations upon local legislation — Cruel and unusual punishments.*

A general law for the administration of justice, either civil or criminal, which professes to be for the government of the whole state, must operate equally upon all.

A statute is not in accordance with an instrument under which courts are established, and their grades fixed, which undertakes to clothe a local and inferior judicial tribunal with power to punish a crime against the general criminal code of the state with more severity than is possessed by those of higher and general jurisdiction; and it is equally clear that special statutes, which arbitrarily, and without the existence of any public need therefor, punish any offense under a general law of the state, when committed in a locality, or part of a locality, or by particular individuals, with a greater penalty than when committed elsewhere in the same county and state, or by others, are certainly destructive of the equal rights of citizens under the law, which equality is our protection as well as our pride; and the attempt to make the gravity of punishment of a crime depend upon the exact spot of its commission, and not upon the degree of criminality, as shown by the attending circumstances, is repugnant to any just theory upon the administration of criminal justice.

When a state has, by a general law, created a crime and fixed the maximum of its punishment, a special statute operating only in localities, or upon particular individuals, whereby, for no perceptible reason, the same identical crime, which consists in the violation of a statute applicable to the whole state, can therein or in those persons be punished with double the severity that it can be elsewhere in the same state, is within the prohibition of *section five* of *article one* of the constitution of the state as to "cruel and unusual punishments."

The power which the charter of the city of Cohoes (*Laws of* 1876, *chap.* 440, *as amended by Laws of* 1880, *chap.* 456) has attempted to confer upon its recorder cannot be upheld, because it is subversive of the

Matter of Bayard.

principles of our fundamental law; and it also violates an express constitutional provision.

When the general law has in plain words declared what shall be the maximum of punishment for a particular crime all over its jurisdiction, and has thus proclaimed the adequacy and sufficiency of the penalty thereby imposed for the offense, a special statute, which excepts from the operation of the general law a small portion of the state and gives to a local magistrate within such excepted district power to inflict double that punishment for the same crime, when committed therein, cannot be upheld, and must be declared void, because it authorizes the infliction of a cruel and unusual punishment.

*Albany, Special Term, June,* 1881.

APPLICATION by *habeas corpus* to discharge Bayard from confinement in the Albany Penitentiary.

*Arthur E. Valois,* for prisoner.

*D. Cady Herrick,* for People.

WESTBROOK, *J.*— Isadore Bayard was tried and convicted at a court of special sessions, held in the city of Cohoes, by the recorder of said city, of the crime of petit larceny, and upon such conviction was sentenced to the Albany Penitentiary for the period of nine months.

The question which this proceeding involves is : Had such court the power to impose so long a period of imprisonment?

The Revised Statutes of the state (*vol. 3, p. 969, sec. 1, 6th edition*) enact : " Every person who shall be convicted of stealing, taking and carrying away the personal property of another, of the value of twenty-five dollars or under, shall be adjudged guilty of petit larceny, and shall be punished by imprisonment in a county jail *not exceeding six months,* or by a fine not exceeding $100, or by both such fine and imprisonment."

By the charter of the city of Cohoes (*chap.* 440 *of Laws of* 1876), the recorder of the city is clothed with " all the powers of justices of the peace in towns, or of courts of

special sessions held by justices of the peace in towns in all criminal cases and matters, and such other and additional powers as are hereinafter conferred upon him."

The act to which reference has just been made, by its next section (*the 29th*), after giving to the recorder jurisdiction in certain criminal cases, and also over "all offenses triable by courts of special sessions in towns," further declares : "When any person charged with any crime or offense, jurisdiction of which to hear and determine is conferred upon said recorder by this section, or shall be charged with habitual drunkenness or disorderly conduct, shall be brought before such recorder, such recorder shall, upon conviction of such offender, have power to punish by fine not exceeding $250, or by imprisonment in the Albany Penitentiary, at hard labor, for a term not exceeding one year, or by both such fine and imprisonment."

Under the act of 1876, it was held by judge OSBORN (*In Matter of Margaret Shike*), that the increased punishment provided for by the act did not apply to a case where the general statute limited the power of punishment by imprisonment to a term of six months.

By chapter 456 of the Laws of 1880, however, the charter of the city of Cohoes was again amended, and it must now be conceded that, so far as the legislature has power so to do, it has given to the recorder of the city of Cohoes authority to punish to the extent provided for by the act of 1876, in "all crimes and offenses over which said recorder is given jurisdiction by the act, when convicted within the city of Cohoes." As by the same amended section (*section 1 of the act of 1880, amending section 29 of the act of 1876*), the recorder is expressly clothed with power to try "all offenses triable by courts of special sessions in towns and in cities of this state," and as such courts of special sessions (*vol. 3 R. S.* [*6th ed.*], 1004, *sec.* 1), have jurisdiction to hear and determine "all cases of petit larceny charged as a first offense," it follows if the act of 1880 is within the constitutional power of the legislature, this sentence must be upheld.

Matter of Bayard.

It is certainly repugnant to every fundamental principle of justice that the laws of the state should prescribe different degrees of punishment for the same offense against a general law in different localities thereof — that the gravity of the penalty for a crime, confessedly committed within the borders of the same state and of the same county, must depend upon the exact spot of its perpetration, and not upon any circumstance adding to its degree — and that a petit judicial officer should be clothed with greater power to punish for certain crimes under and against the general law than is conferred upon the highest criminal courts. And yet precisely this has been attempted by the law under consideration, and if it can be upheld then inferior courts and officers can be clothed with more power than those which are superior, and discriminations in punishment can also be made between portions of single localities (as this law has in fact done in the county of Albany), and even as between individuals, by legal enactment. It is possible that no express constitutional prohibition prevents such legislation, but it certainly is contrary to the whole theory and spirit of our organic law, and therefore as much forbidden in fact as though prohibited by express words (*People ex rel. Bolton* agt. *Albertson*, 55 *N. Y.*, 50 [*see* 55]). It surely needs no argument to prove that a statute is not in accordance with an instrument under which courts are established, and their grades fixed, which undertakes to clothe a local and inferior judicial tribunal with power to punish a crime against the general criminal code of the state with more severity than is possessed by those of higher and general jurisdiction ; and it is equally clear, that special statutes, which arbitrarily, and without the existence of any public need therefor, punish any offense under a general law of the state, when committed in a locality, or part of a locality, or by particular individuals, with a greater penalty than when committed elsewhere in the same county and state, or by others, are certainly destructive of the equal rights of citizens under the law, which equality is our protection as well as our pride ;

Matter of Bayard.

and the attempt to make the gravity of punishment for a crime depend upon the exact spot of its commission — whether it is committed a foot on one side or the other of an imaginary line drawn upon the ground — and not upon the degree of criminality as shown by the attending circumstances, is repugnant to any just theory upon the administration of criminal justice.

In what has been said, it has not been stated that a law applicable to a locality only, will not be valid. There are very many of that character which would be upheld. The spirit of our constitution, however, is opposed to them (*Sec.* 18 *of art. 3 of our state constitution*). What is claimed is, that a general law for the administration of justice, either civil or criminal, which professes to be for the government of the whole state, must operate equally upon all. For (as was said by JACKSON, J., in *Holden* agt. *James*, 11 *Mass.*, 396 [*see* 405]), "it is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages which are denied to all others under like circumstances; or that any one should be subjected to losses, damages, suits or actions from which all others, under like circumstances, are exempted." These words were penned in regard to a special act which exempted the plaintiff in an action from the operation of the general statute of limitations, and the conclusion therein reached was again affirmed in *Picquet, appellant* (5 *Pick.*, 65), and is, as it seems to me, clearly sound. It shocks the moral sense to engraft an exception upon the general law of the state either in favor of or against an individual, whether such exception refers to a civil or criminal remedy. All persons within the jurisdiction of the general public law of the state owe to it the same allegiance, and as all incur in the violation of the same provision, a like guilt, all should be liable to an equal penalty. And what is true in regard to a law for the government of a state is equally applicable to one for the government of a locality.

Matter of Bayard.

They must both operate equally upon all who are subject to their authority. The former must compel obedience to its mandates by penalties which are uniform all over its territory, and the latter, if it attempted to enforce good order in a city by a statute, could not subject the inhabitants living upon one side of a street to a punishment for its violation, which, either in degree or kind, should differ from that imposed upon the residents of the other side under the same circumstances. Discretion in the infliction of punishment, by fixing its maximum and minimum, may be confided to a court, but the legislative enactment must be so framed as to secure equality to all who are subjected to its provisions and who may be liable to its punishments. The vice of the Cohoes act does not consist in the fact that a special criminal statute applicable to it, and to no other part of the county of Albany or of the state of New York, of both of which it forms a part, has been enacted, but that a general law of the state, in the violation of which within its city limits, an individual incurs no more guilt than by its violation elsewhere, is there made to operate with double severity. No special enactment enlarging or defining the crime of petit larceny, if committed within the city of Cohoes, has been passed. An individual committing that crime within its borders is guilty of no offense against a special police law or regulation governing that locality only but of one defined by the general statute, the punishment whereof, if perpetrated within the city limits, is made exceptionally severe. If legislation of such a character can be maintained, our criminal code can become a piece of variegated patchwork. Violations of the same general statutes creating a crime can be punished differently in every locality; and a law, for the government of a locality only, may be so framed as to favor some, and oppress others; and according as the exact spot of the offense may happen to be, the penalty to the offender can be more or less grave. The life of the criminal may depend on scientific measurements to locate the deed for which he is to suffer; and even the right

to inflict punishment at all may turn upon the ability of some local and inferior court to try the cause and to pronounce judgment. To argue upon the validity of such a law is useless. A statement of what can be done, if it is valid, is more forcible than refined reasoning.

The power, then, which the charter of the city of Cohoes has attempted to confer upon its recorder, cannot be upheld, because it is subversive of the principles of our fundamental law. And it also, as will next be attempted to be shown, violates an express constitutional provision.

By article 8 of the Constitution of the United States, it is provided, that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted;" and by section 5 of article 1 of the constitution of our state, it is declared: "Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained." Though the provisions of both the federal and state constitutions are cited, it is the latter only which is applicable (*Pervear* agt. *Commonwealth*, 5 *Wallace*, 475, 476). The language in both is almost identical, and the same restriction is placed upon the legislature of the state in the punishment of crime as is imposed upon congress. It is difficult by a general definition so to define the phrase "cruel and unusual punishments" as to cover its entire meaning. That which in the judgment of one man is cruel, may not seem to be so to another, and that which is unusual to the sight of one individual is quite usual to that of another. To determine, then, whether punishment is or is not cruel and unusual, there must be some standard by which it should be judged; and it seems but just to hold, that when a State has, by a general law, created a crime and fixed the maximum of its punishment, that a special statute, operating only in localities, or upon particular individuals, whereby, for no perceptible reason, the same identical crime, which consists in the violation of a statute applicable to the whole state, can therein

Matter of Bayard.

or in those persons be punished with double the severity that it can be elsewhere in the same state, is within the prohibition. Let us apply this proposition to the case before us. The general law of the state has defined the crime of petit larceny, and, as hereinbefore shown, has also prescribed and fixed the limit of imprisonment, upon a conviction thereof, at six months, which penalty therefore is the usual and common punishment of the offense within its borders, and such fixing of the maximum of punishment is also a legislative declaration that such maximum is an adequate and sufficient penalty for the offense wherever committed. When the recorder of the city of Cohoes is allowed to punish, and does punish for the same offense by an imprisonment for the term of nine months, has he not inflicted a cruel and unusual punishment? Is not a sentence, when no circumstance of atrocity, nor violation of public or private rights has magnified the crime for which it is imposed, "*cruel*," which adds one-half to the maximum of punishment permitted by the general law of the state, and "*unusual*" because not the usual or ordinary one imposed? These questions, as has been previously stated, are to be answered not by the mental standard of an individual mind, but by that which the state has itself made by its general law fixing its character and maximum. Any other mode of reaching a conclusion would be varying and unsatisfactory, and a wise and wholesome constitutional enactment would or would not protect, according as the individual judgment of a judge should conclude. No such uncertainty in the operation and application of the fundamental law should be tolerated when certainty upon such a question is attainable. Acts are startling only by comparison. The punishments inflicted by barbarous nations are neither cruel nor unusual when judged by their standards, and they become so only when measured by the more humane one of civilization. Nay, in some of the states of our union there have been and now are statutes prescribing punishment, which the almost universal judgment of our commonwealth would pronounce

Matter of Bayard.

" cruel and unusual," and yet such statutes have there been
upheld (*See Aldridge* agt. *Commonwealth,* 2 *Va. Cases,* 447).
Evidently, then, the law of the state of New York, prescrib-
ing punishments for crimes committed within a certain local-
ity must be judged by its own general standard.   Its right to
change such general standard is unquestioned, but its power
to select localities or individuals for greater and more severe
penalties than can be inflicted elsewhere and upon others is
most emphatically denied because of the constitutional pro-
vision to which reference has been made.   When the general
law has in plain words declared what shall be the maximum
of punishment for a particular crime all over its jurisdiction,
and has thus proclaimed the adequacy and sufficiency of the
penalty thereby imposed for the offense, a special statute,
which excepts from the operation of the general law a small
portion of the state, and gives to a local magistrate within
such excepted district power to inflict double that punishment
for the same crime, when committed therein, cannot be upheld,
and must be declared void.

I am aware that it has sometimes been argued that the
prohibitions in our federal and our state constitution, which
have been discussed, refer to the *kind* and not to the *degree*
of punishment.   Such a limitation, however, upon the lan-
guage, does not seem to me sound.   It ignores the fact that
punishment, ordinary in its general character, may by excess
become " cruel and unusual," and is, therefore, as much for-
bidden as those unknown to our criminal code.   From what
source, however, emanates the line of thought combated?   It
is impossible, as has already been said, for human ingenuity
to suggest penalties for crime, which the laws of some country
have not enforced.   The education of the individual by the
laws of the state in which he lives has created his standard and
inspired his construction ; and the rule of judicial judgment
adopted in this opinion, that the validity of a local penal
statute, when the constitutional objection we are considering
is urged, must be determined by the general law of the state,

Matter of Bayard.

is the identical one which he has followed in his interpretation of the constitution. . A citizen of New York, accustomed only to punishments by fine, imprisonment and death, might view with horror some· of those allowed by the laws of our sister states; and when he pronounces the latter " cruel and unusual," he has only spoken as the laws of our commonwealth have instructed him. If then, it may be asked, it is just to pronounce any punishment for crime " cruel and unusual" because not of a *kind* to which we have been accustomed, and therefore shocking to our moral sense, why is the same rule unsound when the *extent* thereof is to be judged ? If the standard of judgment is correct as to the one, it must be as to the other; and whilst the right to change such standard by a law applicable to the whole state is conceded (subject of course to the constitutional limitation, to be then applied by the enlightened judgment of its judiciary), yet the right to depart therefrom in a single locality by the attempt to inflict therein either a punishment strange and unknown to its general law, or one which in severity doubles its general maximum, is most emphatically denied.

The case of *Williams* agt. *The People* (24 *N. Y.*, 405), has not been overlooked. It is true that a statute, operating. only in the city and county of New York, which made the offense of stealing from the person, without regard to the amount taken, punishable as grand larceny, was held not to be obnoxious to the particular objection in that case made, to wit, that it violated article 3, section 16, of our constitution, which provides that " no local or private bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in its title ; " but it is also true that none of the propositions which have in this case been ‘discussed were therein raised, nor did the case so glaringly present them. No attempt was made by the New York statute to punish the crime of petit larceny when committed within its limits, by double penalties, but it raised that offense, when committed under certain circumstances, to that of grand

larceny, and a violation of its provisions was the breach of a special local police act, rather than one of · general law.   The act did no violence to the fundamental rule, that the gravity of punishment must depend upon the gravity of the offense, and of its attending incidents, nor was jurisdiction of the offense and the enforcement of its penalties confined to a local and inferior court.   The act was aimed at a crime more prevalent in a large city than elsewhere, and whilst it must be conceded that to a certain extent, at least, it is liable to some of the objections herein made, yet none of them were taken or discussed.   It is, therefore, not decisive of the present case, and the argument to be derived from the fact that if the positions herein taken were sound, they would have occurred to court or to counsel, is weakened by the consideration, that the injustice of that act was not so manifest as that of the present, and valid objections do not always present themselves to the most acute intellect.   Whatever force too, any of the arguments herein used would have had if made on the trial of the Williams case, they must also have been materially weakened at the time of the decision by the court of appeals, in June, 1862, by the fact that on the nineteenth day of April, of the same year (*chap*. 374 *of the Laws of* 1862, *sec.* 2), a precisely similar statute had been passed covering the entire state.

The questions discussed are very important, and I regret that I have been unable to devote more· time to their consideration, but it seems to me clear that local courts cannot be created with power to punish crimes against and under the general law of the state more severely than is allowed to those of general jurisdiction, without violating both the spirit and the letter of the fundamental law of the state.   It cannot, it seems to me, be lawful to punish by death certain offenses against the general public law of the state, when committed in certain localities, provided the trial is by some special, local and inferior court, when the same punishment for the same offense cannot be imposed elsewhere in the commonwealth, nor even in the same locality, when brought before the highest

tribunal of the state. Such legislation, by its attempt to elevate the inferior court above its constitutional superior — by making the extent of punishment for crime depend upon the *locus* of the offense, and not upon its own character, or that of the attending circumstances — and by reason of its obvious discrimination is repugnant to the intent and general principles of our constitution; and its selection of localities and of individuals for the infliction of double the punishment which can be imposed elsewhere and upon others, for the same offense in every particular, makes it also liable to an objection founded upon that clause of the state constitution which forbids the infliction of " cruel and unusual punishments."